No. 15,036.

THORP *v.* THE PEOPLE.

(129 P. [2d] 296)

Decided September 14, 1942.

8

Mr. RALPH J. CUMMINGS, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

MR. JUSTICE BAKKE delivered the opinion of the court.

PLAINTIFF in error, defendant below, was convicted of the embezzlement of $73.87 in money from her employer,

the Office Equipment Company, a corporation, and, after being denied probation, was sentenced to the penitentiary for a term of eighteen months to four years. She seeks a reversal of the judgment. Reference will be made to the parties as defendant, the company and the people, respectively.

Defendant was employed by the company from January, 1933, to August, 1940, when she was dismissed. The company was a small concern and it was defendant's duty to take care of the office, keep the books, make bank deposits, and sell office equipment when no other salesperson was present to do the latter. The manager of the company was C. L. Patterson who spent only about half of his time in the office, the remainder being devoted to sales promotion outside of the office. Shortly before defendant's dismissal, Patterson became suspicious of shortages, because, while the company was doing a fairly good business the books showed a loss. He thereupon made inquiry of certain customers and found that payments made by them to the company had been diverted by defendant to her personal account in the Colorado National Bank. As to the specific charge, viz., the embezzlement of the $73.87, the testimony shows that one Coles had purchased equipment to the extent of about $250, in part payment of which he gave defendant a check in the sum of $73.87—made out to cash at her request—on October 11, 1939; that she immediately endorsed and deposited the same to her individual account in the Colorado National Bank, subject to her exclusive right to draw checks thereon. Her explanation of this on the witness stand was that Patterson had told her that Coles was a poor risk and that she should not accept any of his checks to the company in payment of his account; that personally she trusted Coles and therefore took his checks, and as soon as they cleared obtained the amounts in cash and gave it to Patterson, all of which was emphatically denied by Patterson.

The court allowed evidence of similar deals to be introduced whereby it was shown that defendant had converted checks sent by the Denver & Rio Grande Railroad Company to pay a company account into cash which she never credited. The evidence also disclosed that she bought a fur coat from the Hopper Fur Company and paid for it by giving Hopper credit on a company account; that she paid a personal garage bill by giving credit to the garageman, Mossman, on a company account; that one Newman received credit on his company account for professional services. Objection was made to all of this testimony on the ground that these other transactions were entirely separate and distinct offenses from that charged in the information.

The district attorney, following the discovery of the shortages and a report thereof to him, asked the court to appoint a certified public accountant to audit the company's books. A Mr. Redeker was appointed by the court to make the audit and his report appears in the record as exhibit U. This report shows a shortage in the company's account of eight thousand fifty-two dollars and ninety-two cents. Strenuous objection was made to the admission of any testimony relating thereto and to the introduction of the exhibit itself. The court permitted both testimony and the exhibit to be introduced. No effort was made, however, to show that defendant was responsible for all of this shortage. On the contrary defense counsel endeavored to show that much of the shortage was due to Patterson's use of company funds to pay his personal bills.

This exhibit U, and most of Redeker's testimony, was introduced as a part of the people's rebuttal.

Counsel for defendant in his argument summarizes his grounds for reversal in the following points: 1. Impropriety of the admission of the testimony relating to the other transactions enumerated above. 2. Some of the alleged similar offenses admitted in evidence were too remote and proof of the same was barred by the

statute of limitations. 3. There was a fatal variance between the charge and the proof. 4. Refusal to give defendant's tendered instructions 1 and 2. 5. The court failed to give an instruction on expert testimony. 6. Exhibits O and P, and testimony concerning them, were improperly admitted.

We shall consider these in order.

■ 1. There was no prejudicial error committed in the admission of the testimony concerning defendant's deals with Newman, Hopper, Mossman, and the railroad company. All of it was properly admitted to show a deliberate intent and scheme to defraud the company. Her conduct in these affairs, while not subjecting her necessarily to the exact crime of embezzlement, was nevertheless of the same general character; i.e., using assets of the company to her own financial advantage, so as not to offend the exclusion rule. We think the circumstances here are so clearly within the rule as well stated in the recent case of *Bacino v. People,* 104 Colo. 229, 233, 90 P. (2d) 5, as to need no repetition here. The purpose of the testimony and limitation of its scope was specifically covered by the court's instructions.

■■ 2. There was no prejudicial error committed by the court in admitting the testimony pertaining to the purchase of the fur coat by defendant in August, 1937, because the transaction occurred more than three years prior to the time of the commission of the crime charged in the information. She committed no crime in purchasing the coat. The crime appears (well within the three year period of limitation) when on December 30, 1937, and February 27, 1940, she converted the company's account to her own use in paying for the fur coat. The rule upon which counsel for defendant relies —as to which we make no comment for the purpose of this case—is set forth in *Abbott v. People,* 89 Colo. 121, 122, 299 Pac. 1053, as "the rule announced in statutory rape cases * * * ." In addition it is to be noted that the

statute of limitations is a defense. *Packer v. People,* 26 Colo. 306, 57 Pac. 1087.

3. The alleged variance is that the information charged embezzlement of money, whereas the proof showed embezzlement of a ·check. No such distinction is recognized. "It is of no consequence whether the property fraudulently obtained was money or a check, as long as it was a thing of value." *Updike v. People,* 92 Colo. 125, 129, 18 P. (2d) 472.

4. Complaint is made concerning the court's refusal to give defendant's tendered instructions 1 and 2 based upon the theory that part of the people's case was to establish that the company was a bona fide corporation, which the district attorney allegedly failed to prove. The photostatic copy of the articles of incorporation and part of the minutes of the company appear in the record. These minutes were made by defendant. Whether the company was a de jure or de facto corporation is immaterial to any issue in this case, and no prejudice resulted from the court's failure to instruct on an immaterial issue.

5. There was no prejudicial error in the court's failure to give an instruction on expert testimony. As none was requested, we assume that defendant's counsel did not think his client was prejudiced by the court's action in not giving such an instruction at the time. Failure of counsel to request an instruction is not necessarily fatal, but we act on our own motion in this regard only "when we feel that a seriously prejudicial error was made and that justice requires such consideration." *Reppin v. People,* 95 Colo. 192, 34 P. (2d) 71, quoted in *Paine v. People,* 106 Colo. 258, 103 P. (2d) 686.

6. People's exhibits O and P were respectively, deposit slips made out by defendant, and a bank statement showing the company's account during part of the period involved. As to exhibit O, the slips were identified by defendant herself as being in her handwriting, and exhibit P was properly identified by Bennett and

Durkin, employees of the bank. No objection was made at the trial to their introduction, and to the extent that they were hearsay, the error, if any, in their admission in evidence was cured by defendant's own testimony, since she admitted the items thereon, but endeavored to explain away their effect.

■ Over half of the lengthy record in this case is devoted to an attempted trial of the prosecuting witness. We hold no brief for his conduct, but on the other hand it is of no avail to defendant here to say, "He was crooked, too," which was the intended effect of her testimony. The trial court was lenient, almost to a fault, in permitting counsel to attempt to shift the blame, and there was much conflicting testimony; however, such conflicts are questions for the jury, not the court. We think defendant was accorded a fair trial and that she was given every consideration the law permits.

Judgment affirmed.

MR. CHIEF JUSTICE YOUNG, MR. JUSTICE BURKE and MR. JUSTICE HILLIARD concur.